# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

December 19, 2017

**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**PENNY JONAS,**
**Claimant Below, Petitioner**

vs.)    **No. 17-0595** (BOR Appeal No. 2051742)
                    (Claim No. 2014033909)

**WEST VIRGINIA UNITED HEALTH SYSTEM,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Penny Jonas, by William C. Gallagher, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia United Health System, by Steven K. Wellman, its attorney, filed a timely response.

The issue on appeal is whether a referral to Peter Stern, M.D., for a possible triangular fibrocartilage complex tear is medically related and reasonably required treatment. The claims administrator denied the request for the referral on March 11, 2016. The Office of Judges affirmed the claims administrator's decision on December 21, 2016. The Board of Review affirmed the Order of the Office of Judges on June 1, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Jonas, a laundry attendant for West Virginia United Health System, injured herself on May 18, 2014, when she fell from the top step of a truck. She landed on her right shoulder. In the process her head hit the concrete and she was rendered unconscious. She was treated for her injuries and eventually requested an outpatient arthroscopy with debridement of a triangular fibrocartilage complex tear and interpositional arthroscopy at the base of the right thumb. On December 28, 2015, William Saar, D.O., completed a utilization review determination in relation

1

to the request for outpatient right thumb surgery. Dr. Saar stated that while guidelines would support the role of surgery for a triangular fibrocartilage complex tear, there is currently a lack of documented evidence of specific conservative care that has been utilized for the thumb to support the role of interpositional arthroplasty. He stated that there is no indication of specific dedicated imaging findings or indication of specific treatment that has been rendered to the thumb. Also, a causal relationship to Ms. Jonas's initial wrist related complaints and the tear have not been established. Without documentation of six months of failed conservative care and evidence of severe degenerative arthrosis, surgical process to include interpositional arthroplasty in association with a wrist arthroscopy and triangular fibrocartilage complex debridement would not be indicated.

On January 4, 2016, the claims administrator denied the request for surgery. Two days later, Joseph Grady, M.D., completed an independent medical evaluation report. Dr. Grady's assessment was status post right shoulder rotator cuff repair with residual right shoulder arthralgia and right wrist pain with internal derangement and tear of the triangular fibrocartilage complex. He also found some osteoarthritic degenerative changes of the right hand, particularly involving the area of the right thumb. Dr. Grady noted that Ms. Jonas had a couple of surgeries on the shoulder, and subsequent physical therapy. An MRI revealed a cartilage tear of the right wrist and arthroscopic surgery of the right wrist for the cartilage tear would be a reasonable consideration. But an arthroplasty for the right thumb would presumably be for the osteoarthritic degenerative changes, which is a pre-existing condition. Dr. Grady found Ms. Jonas was not at maximum medical improvement. He said that when she follows up with Dr. McElroy later this month, no further surgery is going to be pursued. However, it would be reasonable for further treatment of the right wrist. He said that arthroscopic surgery for the cartilage tear would be a reasonable consideration, but he could not specifically associate an arthroplasty of the right thumb with the injury of May 18, 2014. He said that if for some reason that is not going to be done, that she would be at maximum medical improvement. He noted Ms. Jonas was not currently working, and it was not clear when she could return to full-duty. She could work in a modified capacity where she is not really using the right arm.

On January 25, 2016, Alan Koester, M.D., completed a report which stated he believed Ms. Jonas's condition was causally related to the work-related injury and that the arthroscopy with debridement of triangular fibrocartilage complex tear and interpositional arthroscopy at base of right thumb should be authorized. On January 28, 2016, Dr. Grady completed an addendum to his independent medical evaluation report. Dr. Grady stated that he believed Ms. Jonas was at maximum medical improvement for the right shoulder. He said he did not believe she was at maximum medical improvement for the wrist because of the triangular fibrocartilage complex tear that was present. He said if no treatment was allowed then she would be at maximum medical improvement as of the date of determination. Dr. Grady stated that it is his opinion that the treatment plan would be to treat the cartilage tear that was noted on the MRI, and if treatment is not going to be pursued for the cartilage tear, then he did not believe there is any additional treatment to be done for the right wrist that would significantly benefit her. He said it was his expectation that she will never return to full-duty work, since the persistent tear of her wrist is not anticipated to spontaneously resolve in the absence of any treatment. On March

11, 2016, the claims administrator denied referral to Dr. Stern for possible right wrist triangular fibrocartilage complex tear.

Ms. Jonas was deposed on April 27, 2016. She stated that on the date of injury, she was working as a laundry attendant at Camden Clark Hospital. While she was getting out of the company truck, she fell from the top step and landed on her right side. She hit her head on the pavement. She said that she was knocked out for a few minutes. She went to the emergency room. They did a CT of the head, x-rayed her ribs, and said that she suffered a concussion. She said that she kept complaining of hurting the back of her wrist on the outer side of her right arm. Ms. Jonas testified that she was subsequently found to have a hairline fracture of the right arm and it was casted. After one week, she said, the cast was causing problems with her right thumb; it locked up in her sleep. An MRI of the right shoulder found that she had a torn ligament and a torn rotator cuff. She had shots, therapy, and surgery. She had therapy afterwards as well but was still having problems. She had another right shoulder MRI, which showed she had a torn ligament. She underwent a subsequent surgery on August 17, 2015. She said this torn ligament was worse than the first one. She said she still was having problems with the right shoulder blade in the back and her ribs were throbbing and stinging at times. She stated that she still needed surgery on the right wrist. She said that she has been to Dr. Koester four times and every time, it is a different story of what is wrong. She said she would like to put in a request for a change of physician for right wrist surgery. She said she is back to the right shoulder burning. Ms. Jonas testified that Dr. Stern is a hand specialist. She testified that she is wearing a brace on her right wrist and wears it at all times. Ms. Jonas reported that she had an injury in 1980 or 1981, and she had carpal tunnel surgery in 1989 or 1990. She stated that she is attempting to get work through vocational rehabilitation and on her own, but she has not been successful because of her weight lifting restrictions. She is receiving rehabilitation temporary total disability benefits.

The Office of Judges found that a referral to Dr. Stern was not medically related and reasonably required treatment because Ms. Jonas did not submit sufficient evidence to show it was related to the compensable injury. The Office of Judges found that Ms. Jonas did not submit the request from Dr. Emery, which appears to be the basis of the request for a referral to Dr. Stern. In addition, Ms. Jonas did not introduce evidence showing what the compensable conditions were under the claim. Although Dr. Grady's reports indicate the right wrist is a compensable condition in this claim, the Office of Judges found that it was not apparent that the triangular fibrocartilage complex tear was a compensable condition. Because the referral to Dr. Stern was made to treat the triangular fibrocartilage complex tear, the Office of Judges found that it was properly denied. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Ms. Jonas did not submit sufficient evidence to show that a consultation with Dr. Stern was medically related and reasonably required treatment. The evidence of record does not establish that the triangular fibrocartilage complex tear was a compensable condition. Because that was not established, a consultation for the same was properly denied.

3

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 19, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman

**DISSENTING**:
Justice Menis E. Ketchum

Justice Elizabeth D. Walker, Disqualified